RUSSELL, respondent, *v.* HOYT ET AL., appellants.

EVIDENCE — *Declaratory statement must be on oath — Judicial notice.*
According to the act of the Montana legislature of May 8, 1873, the declaratory statement of location of a quartz mining claim, required to be recorded, must be on oath. Objection to the introduction of such a declaratory statement in evidence when the same is not sworn to as required was properly sustained by the court.

Courts will not take judicial notice of the situation of a private claim

on land or mining ground, or its distance from the seat of government. It is the duty of those claiming the benefit of any exception to the general application of any statute to make such fact appear by proof.

PLEADING — *Time of making objection to want of a replication.*— The objection that there was no replication to the answer among the pleadings cannot be made for the first time in the appellate court.

*Appeal from Third District, Lewis and Clarke County.*

CHUMASERO & CHADWICK, for appellants.

1. The verdict was against the weight of evidence. There was not sufficient to justify the verdict, and it was against law.

(*a*) The plaintiff failed to show title in himself.

(*b*) He failed to show that his location contained a vein or lode containing precious metals. *Overman S. M. Co.* v. *Ceredran,* 15 Nev. 152; Laws U. S. sec. 2320; Laws of M. T. 1864, p. 327, secs. 2, 5; *Foote* v. *Nat. M. & Ex. Co.* 2 Mont. 403; *McKeon* v. *Frisbee,* 9 Cal. 137; Sickels' Mining Laws, p. 64; *Wolfley* v. *Lebanon M. Co.* 4 Col. 116, 117.

(*c*) The plaintiff's survey for adverse claim varied materially from his recorded notice of location. See Evidence of Foote, pp. 25–29, and plat; Essler's Evidence, pp. 29, 30, 32; Gilmour's Evidence, pp. 37, 38; Marsh's Evidence, p. 20; Act of Congress of 1866 (14 Stats. p. 467); *Gleeson* v. *Martin White Co.* 13 Nev. 442; *Golden Fleece* v. *Cable Co.* 12 Nev. 330.

(*d*) The evidence showed that the Russell and Mammoth lodes were entirely distinct and separate veins. Evidence of Foote, above referred to; also evidence of Essler, above referred to. See, also, evidence of Perry, pp. 31–33, line 10; also evidence of Davis, p. 35, and of McDonald, on same page; also see plat. The evidence further showed conclusively that the surface ground of the Russell location did not include any part of the Mammoth lode.

(*e*) Even if the location of the Russell lode was a valid location, the evidence shows that the plaintiff permitted

the defendant to go to work and make a discovery on the Mammoth lode without objection, and he is estopped thereby from asserting claim thereto. *Crossman* v. *Pendery et al.* U. S. Dist. Court Colorado, April term, 1881, opinion by Miller; Chicago Legal News, July, 1881, p. 368.

2. The court below erred in admitting in evidence the record of the location of the Russell lode. Stats. of M. T. 1864, p. 327.

3. The plaintiff's action was barred by the statute of limitation of Montana territory, which was set up in the answer and which was not denied by any replication; no replication having been filed to such answer. See Laws of M. T. 1872, p. 591, sec. 2; *420 Company* v. *Bullion Co.* 9 Nev. 240 (S. C. 3 Saw. 644, 657). And the court erred in refusing to permit defendant to introduce evidence on that point.

4. The court permitted the plaintiff to introduce evidence of the character and value of the so-called Russell vein, and erred in striking out the evidence offered by defendant in contradiction. First, because such evidence tended to show that such lode was of no value. Second, because the evidence offered by defendant tended to the impeachment of plaintiff. *Foote* v. *N. M. & Ex. Co.* 2 Mont. 403; Sickels' M. Laws, p. 64; 9 Cal. 137; *Crossman* v. *Pendery,* heretofore cited.

5. The court below erred in excluding from the jury the notice of location of the Mammoth lode. It was competent evidence and was not denied by replication.

(*a*) The lode was located under the laws of 1872, p. 523, sec. 5, under which law the proper affidavit or oath was made.

First, we deny that any oath was necessary under the act of congress in force. Sickels' M. Laws, p. 164, Dec. of Secretary of Interior.

(*b*) Second. That if a different oath from the one contemplated by the law of 1872 was provided by the law of May 8, 1873, that it was not in force at the time and

place where the Mammoth lode was situated. The law
of 1872, p. 506, sec. 1, provided that one day should be
allowed for each fifteen miles of distance from the seat
of government before the law should go into effect. Re-
enacted in the Revision, p. 774, sec. 785.

6. The court below refused to take judicial notice of
the *situs* of the Mammoth lode; of the place where the
seat of government was; of government surveys; of the
boundaries of counties, townships and ranges — notwith-
standing the exact *situs* of the premises was admitted
by the pleadings; the county, mining district, town-
ship, range and government survey.

The act of 1873 was passed at the then seat of govern-
ment in Madison county, at Virginia. We contend that
the court was bound to take judicial notice of that fact;
of the boundaries of Madison county and of the other
counties of the territory, and their distance from each
other as fixed and established by law. See Laws of 1872,
p. 430, secs. 2 and 6, establishing the boundary lines of
counties by courses and natural objects laid down and
located upon government maps, from which distances
could be calculated; and from which it is demonstrable
that the distance from Virginia City to the Mammoth
lode is over one hundred and fifty miles; so that the law
of 1873 could not have gone into effect until the 19th or
20th of May, 1873. We cite on this question, as to what
facts the court is bound to take judicial notice, the fol-
lowing authorities: Judicial notice will be taken of the
government surveys of public lands: *Mossman* v. *Forest,*
27 Ind. 233; *Hill* v. *Bacon,* 43 Ill. 477; *Atwater* v.
*Schenck,* 9 Wis. 160; *Wright* v. *Phillips,* 2 Greene
(Iowa), 191; *Kile* v. *Town of Yellowhead,* 80 Ill. 208;
*Gardner* v. *Eberhart,* 82 Ill. 316; *Murphy* v. *Hendricks,*
57 Ind. 457.

(*b*) Of distances as calculated on a map: *Monflet* v.
*Cole L. R. En. Co.* 71; 1 Wharton on Ev. p. 294, sec. 335.

(*c*) Of what is generally known within the limits of

the court's jurisdiction: *Brown* v. *Piper*, 1 Otto (91 U. S.), 371.

(*d*) Of the boundaries of the several states and judicial districts: Same case.

(*e*) Of leading geographical features of the land: *United States* v. *La Veageance*, 3 Dal. 297; *Peyroux* v. *Howard*, 7 Pet. 342; *Mossman* v. *Forest*, 27 Ind. 233; *Cash* v. *Auditor of Clark Co.* 7 Ind. 227.

(*f*) The courts of particular states are bound to take judicial notice of its boundaries and its division into towns and counties, and the limits of such divisions and of its judicial districts: *Lyell* v. *Lapeer Co.* 6 McLean, 446; *United States* v. *Johnson*, 2 Saw. 482; *Buchanan* v. *Whitman*, 36 Ind. 257; *Goodwin* v. *Appleton*, 22 Me. 453; *Ham* v. *Ham*, 39 Me. 313; *Keyser* v. *Coe*, 37 Conn. 597; *Winnipiseogee Lake Co.* v. *Young*, 40 N. H. 420; *State* v. *Powers*, 25 Conn. 48; *Com'rs* v. *Spitzler*, 13 Ind. 235; *Ind. & Cin. R. R.* v. *Case*, 15 Ind. 42; *Buckingham* v. *Gregg*, 19 Ind. 401; *Hinckley* v. *Beckwith*, 23 Wis. 328; *Wright* v. *Hawkins*, 28 Tex., 452; *Brown* v. *Elms*, 10 Humph. 135; *King* v. *Kent*, 29 Ala. 542; *People* v. *Robinson*, 17 Cal. 363.

(*g*) The position of leading cities and villages: *Price* v. *Page*, 24 Mo. 65; *Bell* v. *Barrett*, 2 J. J. Marsh. 516; *Seigbert* v. *Stiles*, 39 Wis. 533; *Neaderhouse* v. *State*, 28 Ind. 257; *Dickinson* v. *Breedon*, 30 Ill. 279; 1 Whart. Ev. 327 to 340, inclusive; Greenl. Ev. vol. 1, ch. 2.

The court below, in giving the instruction asked for by plaintiff, ignored entirely the admissions of the pleadings, took all questions in the case from the jury, and was not justified by the pleadings or evidence in the case, and was error. See Record, p. 48; Answer, p. 9.

The several instructions Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12 were each one of the law applicable to the case and should have been given.

The thirteenth instruction should have been given. It was law and applicable to the case.

We call attention to the several bills of exception taken by defendant on the trial.

E. W. & J. K. TOOLE, for respondents.

1. By reference to the record, p. 61, it will be seen that there were but three specifications made in reference to the insufficiency of the evidence in appellants' motion for a new trial. To these alone are they limited, and additional points made in their brief will not be considered. Upon this subject the jury were the judges of the evidence; there was a substantial conflict in it, and the court will not in such cases disturb the verdict.

2. There was no estoppel pleaded; none relied upon; no evidence to support any; and no point made on account of it in the motion for a new trial. There is nothing in the point sought to be made, and it could not be entertained under the record in this case even if there was.

3. It is too late now to object on account of the want of a replication; the point should have been made before the trial proceeded, so as to have given plaintiff an opportunity to supply the pleading, if any were necessary. The complaint, however, alleges ownership, possession and right of possession prior to defendants' entry, and continued down to the commencement of the action. See *Keyser* v. *Cannon*, 29 Ohio St. 1359.

4. If the record of the Mammoth lode was fatally defective under the laws of the United States and territory, then the defendants have no cause of complaint. They neither had possession, right of possession, or a right to a patent under the mineral act, and were consequently in no situation to avail themselves of any of the errors assigned in this case.

None of the authorities cited by appellants are in point. None of them go so far as to say that the court would take judicial notice of the distance from the capital of the territory to the Mammoth lode. The general

rule is that a statute takes effect from and after its passage. Appellants should therefore have brought themselves within the exception by showing the distance from the seat of government to the lode in question. This they did not even attempt to do.

Besides, it will be seen that the act in question was passed on the 8th day of May, 1873; that it had reference to the *records* of lode claims, and nothing else. It leaves all other matters just where the laws of the United States have left them. This record, to which the act applies, was made on the 29th day of May, 1873, twenty days after its passage. This would, according to the theory and computation of counsel, far exceed the distance claimed.

We contend and insist that this is decisive of this case adversely to appellants.

### REPLY OF APPELLANT.

The respondent cites only one authority in his brief to sustain any of its propositions, and that upon a point which, in the view of the case taken by appellant, and as shown by the record, was not of paramount importance. The statute of limitations was pleaded, and the appellant offered evidence to sustain his claim of adverse possession.

If it was not a fact admitted by the pleadings, it was a proper subject of evidence, and it was error to exclude such evidence.

If it was a fact admitted by the pleadings, the appellant was entitled to judgment.

As to the necessity of the denial of the defense of adverse possession, see R. S. p. 29, sec. 107.

It is not, as assumed by respondent, the duty of one party to an action to suggest what shall be the character of the pleading of another. The case must be determined by the issues joined between the parties.

The act of May 8, 1873, was not in force and did not

take effect at the place where the Mammoth lode is located until certainly the 19th day of May, at least six days after the lode was discovered; and we urge that it had no application whatever to a lode discovered before it went into full force and effect. The law is limited in its operation to those lodes discovered after it did go into effect.

On the question of judicial notice no authorities are cited by respondent, and those cited by appellant remain entirely unanswered.

WADE, C. J. Plaintiff claiming by virtue of his location of the J. H. Russell lode situate in the Ten Mile Mining District, Lewis and Clark county, and having filed his protest and adverse claim to the application of the defendants for a patent to the Mammoth location, brings this action to have determined the right of possession to the ground in dispute. The plaintiff's location was made in July, 1867, under the law of 1864, and answers all the requirements of the law. There was no issue in the pleadings as to a discovery upon this location, and all testimony upon that subject was properly excluded from the jury.

The defendants base their right to the Mammoth lode upon a notice of location recorded on the 29th day of May, 1873. To this notice there is an affidavit attached stating that the locators are citizens of the United States and of the territory, but the matters and things contained in the notice or declaratory statement are not sworn to.

On the trial the plaintiff objected to the introduction of this notice and declaratory statement in evidence, which objection was sustained, and upon this action of the court the defendants assign error.

On the 8th day of May, 1873, twenty days before the Mammoth location was made and recorded, the following act of the legislature was approved and became a law:

"Any person or persons who shall hereafter discover any mining claim upon any vein or lode bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposit, shall within twenty days thereafter make and file for record in the office of the recorder of the county in which said discovery is made, a declaratory statement thereof in writing, *on oath,* before some person authorized by law to administer oaths, describing such claim in the manner provided by the laws of the United States;" which act took effect and was in force from and after its passage.

The following act was in force at the date of the passage and approval of the foregoing: "All acts and joint resolutions which declare that they take effect from and after their passage and approval by the governor are hereby declared to take effect only at the seat of government; and in other portions of the territory, allowing fifteen miles from the seat of government for each day."

The act of May 8, 1873, was enacted and became a law at a session of the legislative assembly at Virginia City, then the seat of government of the territory, and appellants contend that the court ought to have taken judicial notice of the place where the Mammoth lode was located and its distance from the seat of the territorial government, and that by such notice, and without proof, to have determined and declared that the Mammoth location was so far distant from the capital of the territory as that the act of May 8th was not in force as to it, at the time the same was made and recorded, on the 29th of May, 1873.

Courts will take judicial notice of what is generally known within the limits of their jurisdiction: of the divisions of a state or territory into towns and counties; of the leading geographical features of the land; of the position of important cities and towns, and of the government surveys of the public lands; but we are not aware of any principle or authority that would authorize or require a court to take judicial notice of the place where mere private property is situated, or its distance

from the seat of government of the political division within which it is situated. Only matters of public importance and notoriety are within the scope of what courts will take judicial notice of. Matters of mere private concern, as the location or situation of a farm or a mining claim, or their distance from the seat of government, are not within the operation of the principle.

The act of May 8, 1873, was by its terms in force from and after its passage. If the defendants were within the exception they ought to have made that fact appear by proof.

The objection to the introduction of the declaratory statement of the location of the Mammoth claim was properly sustained. The defendants basing their rights upon this declaratory statement, they had no standing in court without it. Possession without a valid location could not affect the rights of plaintiff. The right of possession comes only from a valid location. A location is not valid without a declaratory statement on oath. Without such a location the defendants could not question the plaintiff's rights on the premises.

The objection that there was no replication to the answer cannot be raised for the first time in this court. If a replication had been necessary the question ought to have been raised in the court below, where the same might have been supplied.

The judgment is affirmed, with costs.

*Judgment affirmed.*